UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JEFFREY PETER ROMAK,

                                      **Plaintiff,**

    v.                                                                                     1:15-cv-01380

**CAROLYN W. COLVIN,**
**Acting Commissioner of**
**Social Security,**

                                      **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


## DECISION & ORDER

**I. INTRODUCTION**

     Jeffrey Peter Romak ("Plaintiff") brings this action pursuant to § 205(g) of the Social Security Act ("SSA"), 42 U.S.C. § 405(g), to review a final determination by the Commissioner of Social Security ("Commissioner") denying his application for benefits. Plaintiff argues that the Commissioner's decision must be reversed and the matter remanded on two grounds: (1) The Appeals Council should have reversed the decision of the Administrative Law Judge (ALJ) based upon new and material evidence provided to it after the ALJ rendered her decision; and (2) Plaintiff's residual functional capacity as determined by the ALJ is not supported by substantial evidence in the record. The Commissioner argues that (1) the Appeals Council properly determined not to reverse the ALJ because the newly-presented evidence was not material to the ALJ's decision; and (2)

1

the ALJ's decision is supported by substantial evidence and made in accordance with the correct legal standards.

Pursuant to Northern District of New York General Order No. 8, the Court proceeds as if both parties had accompanied their briefs with a motion for judgment on the pleadings. For the reasons that follow, Plaintiff's motion is is denied, Defendant's motion is granted, and the decision of the Commissioner is affirmed.

## II.   PROCEDURAL HISTORY

On December 16, 2012, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, and a Title XVI application for supplemental security income. In both applications, Plaintiff alleged disability beginning April 20, 2011. These claims were initially denied on April 17, 2013. Thereafter, Plaintiff filed a written request for a hearing.

ALJ Dale Black-Pennington presided over the hearing held on April 30, 2014, in Albany, N.Y. Plaintiff appeared and testified at the hearing. Plaintiff was represented by Janice Cammarato, a non-attorney representative. Connie Louise Standhart, an impartial vocational expert, also appeared and testified at the hearing.

On May 20, 2014, ALJ Black-Pennington issued a decision finding that Plaintiff was not disabled. Tr. 15-25. This decision became the final decision of the Commissioner on September 18, 2015, when the Appeals Council denied Plaintiff's request for review. Tr. 3-6. This action followed.

## III.   FACTS

The parties do not dispute the underlying facts of this case as set forth by ALJ

2

Black-Pennington in her May 20, 2014 Decision. Tr. 15-25. Accordingly, the Court assumes familiarity with these facts and will set forth only those facts material to the parties' arguments.

## IV. THE ADMINISTRATIVE LAW JUDGE'S DECISION

In adjudicating Plaintiff's claim, the ALJ applied the five-step sequential evaluation process for determining whether a claimant is disabled. Tr. 15-16. The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his April 20, 2011, alleged onset date. Tr. 17. At the second step, the ALJ concluded that Plaintiff had the following severe impairments: cervical and lumbar degenerative disc disease; myotonic dystrophy; chronic obstructive pulmonary disease (COPD); anxiety; depression; and impulse control disorder. Tr. 17. At step three, the ALJ found that Plaintiff's impairments neither met nor equaled one of the impairments listed in Appendix 1, 20 C.F.R. Part 404, Subpart P. Tr. 18. After considering the evidence in the record, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except:

- He could only perform frequent, as opposed to repetitive, bending and stopping and could only perform occasional kneeling or squatting.

- He would be off-task less than 10 percent of the workday.

- He would only be able to perform simple routine tasks; follow and understand simple instructions and directions; and perform complex tasks with occasional supervision.

Tr. 20.

At step four, the ALJ found that Plaintiff could not perform his past relevant work. Tr. 24. The ALJ proceeded to step five of the sequential analysis and found that, given

3

Plaintiff's RFC and vocational factors, he was able to perform other work that exists in significant numbers in the national economy. Tr. 24-25. Specifically, the ALJ relied on the testimony of a vocational expert, who concluded that a hypothetical individual with the same RFC and vocational profile as Plaintiff could perform the following jobs: Photocopy Machine Operator, Collator Operator, Cleaner, and Housekeeping. Accordingly, the ALJ found that Plaintiff was not disabled. Tr. 25.

Plaintiff requested a review of the unfavorable decision, Tr. 12, and his representative submitted a letter-brief on July 23, 2014, arguing that the ALJ's decision should be reversed or the matter remanded for further determination based upon a June 26, 2014 report from neurologist Niangui Wang, M.D., and because Plaintiff's RFC as determined by the ALJ was not supported by the substantial evidence in the record. Tr. 148-50.

Dr. Wang's report, which was attached to the letter-brief, indicates, *inter alia*, that Plaintiff was last seen on May 30, 2014 for weakness and muscle atrophy. Dr. Wang indicates that Plaintiff had noticed weakness since 1993, Plaintiff noticed that the weakness has been gradually getting worse over the years, that Plaintiff's mother had myotonic dystrophy, that Plaintiff has had difficulty walking and sometimes difficulty with breathing, that Plaintiff has had falls, that Plaintiff has noticed cataracts, that Plaintiff reports he is infertile and has no children, and that Plaintiff notes numbness and tingling in his hands. Tr. 264. Dr. Wang further indicates that Plaintiff had an EMG "done recently" which showed that he has myotonic discharges. Dr. Wang stated: "Clinically, the patient does have myotonia with hand opening and eye closing. The patient has a hard time releasing a grip hand. The patient notes that his symptoms are getting worse during the winter. The patient

4

did follow up with a cardiologist and eye doctor recently. Lastly, the patient had a mass in the right elbow of unknown nature." Id.

As for his impressions, Dr. Wang writes: "This is a 49-year-old white gentleman with myotonic dystrophy type I. In addition he also has carpal tunnel syndrome based on the EMG report of moderate to severe degree. The mass at the right elbow is of unknown nature." Id. For his recommended care plan, Dr. Wang indicates that he would like Plaintiff to talk with a neurosurgeon for a potential carpal tunnel release, and has "strongly urged" Plaintiff to follow up with his cardiologist, ophthalmologist and pulmonologist for continued care. Id. Dr. Wang further indicates:

> For his neurological condition, i.e. the myotonic dystrophy type I, I think he is 100% disabled. For sure, we do not have a way to cure his neurological condition, i.e. the myotonic dystrophy type I, and his condition is going to continue to get worse over time. In this regard, the patient is 100% disabled because of his neurological condition, i.e. the myotonic dystrophy type I.

*Id.* 265.

As to his argument that the ALJ's decision is not supported by substantial evidence, Plaintiff points out that the ALJ determined that his anxiety and impulse control disorder cause more than minimal limitation in his ability to perform work-related activity, but did not include any limitation in his RFC as a result of his anxiety and impulse control disorder. Tr. 149.

In rejecting Plaintiff's appeal, the Appeals Council indicated that it considered the reasons Plaintiff disagreed with the decision but found "that this information does not provide a basis for changing the Administrative Law Judge's decision." Tr. 4. The Appeals Council also indicated that it looked at Dr. Wang's June 26, 2014 neurological evaluation but found that because the Administrative Law Judge decided Plaintiff's case through May

5

20, 2014, and because "this new information is about a later time, . . . [i]t does not affect the decision about whether you were disabled beginning on or before May 20, 2014." Id. The Appeals Council also informed Plaintiff that if he wanted the Commissioner to consider whether he was disabled after May 20, 2014, he needed to re-apply for benefits. Id.

## IV. STANDARD OF REVIEW

The Court's review of the Commissioner's determination is limited to two inquiries. See 42 U.S.C. § 405(g). First, the Court determines whether the Commissioner applied the correct legal standard. See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990); Shane v. Chater, No. 96-CV-66, 1997 WL 426203, at *4 (N.D.N.Y July 16, 1997)(Pooler, J.)(citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)). Second, the Court must determine whether the Commissioner's findings are supported by substantial evidence in the administrative record. See Tejada, 167 F.3d at 773; Balsamo, 142 F.3d at 79; Cruz, 912 F.2d at 11; Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982). A Commissioner's finding will be deemed conclusive if supported by substantial evidence. See 42 U.S.C. § 405(g); see also Perez, 77 F.3d at 46; Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)("It is not the function of a reviewing court to determine *de novo* whether a Plaintiff is disabled. The [Commissioner's] findings of fact, if supported by substantial evidence, are binding.")(citations omitted). In the context of Social Security cases, substantial evidence consists of "more than a mere scintilla" and is measured by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971)(quoting

6

Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)). Where the record supports disparate findings and provides adequate support for both the Plaintiff's and the Commissioner's positions, a reviewing court must accept the ALJ's factual determinations. See Quinones v. Chater, 117 F.3d 29, 36 (2d Cir. 1997)(citing Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982)); Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990). Although the reviewing court must give deference to the Commissioner's decision, a reviewing court must bear in mind that the Act is ultimately "'a remedial statute which must be 'liberally applied;' its intent is inclusion rather than exclusion.'" Vargas v. Sullivan, 898 F.2d 293, 296 (2d Cir. 1990)(quoting Rivera v. Schweiker, 717 F.2d 719, 723 (2d Cir. 1983)).

## VI. DISCUSSION

### a. New Evidence Provided to the Appeals Council

As indicated above, Plaintiff contends that the Appeals Council erred when it failed to remand his matter based upon the "new and material evidence" provided in Dr. Wang's June 26, 2014 report. Plaintiff argues that the report is material because Dr. Wang opines that Plaintiff is 100% disabled as a result of his neurological condition. Plaintiff further argues that although Dr. Wang's report post-dates the May 20, 2014 ALJ decision, Dr. Wang's opinion refers to Plaintiff's neurological condition which was diagnosed and treated by Dr. Wang well before the ALJ's decision. Plaintiff points out that the ALJ determined that Plaintiff's myotonic dystrophy was a severe impairment and, therefore Plaintiff argues, the evidence provided by Dr. Wang "directly relates to the period on or before the date of the [ALJ's] decision." Pl. Br. p. 4. Plaintiff asserts that "[a]ll of the opinions in the record

7

regarding [Plaintiffs] limitations are a result of his orthopedic impairments only, not his neurological condition," and thus remand to the ALJ was warranted. *Id.*

The Commissioner argues that Dr. Wang noted only that a recent EMG study revealed myotonic dystrophy and carpal tunnel syndrome, and merely summarized Plaintiff's subjective allegations as of the May 30, 2014 consultation. The Commissioner contends that the information does not relate to a period prior to the ALJ's hearing decision, and, even assuming that it did, the entire administrative record, including the new evidence provided by Dr. Wang, provides substantial evidence supporting the ALJ's decision.

A claimant is expressly authorized to submit new and material evidence to the Appeals Council. Perez v. Chater, 77 F.3d 41, 44 (2d Cir. 1996)(citing 20 C.F.R. §§ 404.970(b), 416.1470(b)). "[N]ew evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision." Perez, 77 F.3d at 45. The Appeals Council need consider the additional evidence only where it relates to the period on or before the date of the ALJ's hearing decision. See 20 C.F.R. §§ 404.970(b), 416.1470(b). The Appeals Council will grant review only if it finds that the "administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." Id. In other words, the Appeals Council need consider new evidence and reverse or remand only if: (1) the evidence is material; (2) the evidence relates to the period on or before the ALJ's hearing decision; and (3) the Appeals Council finds that the ALJ's decision is contrary to the weight of the evidence, including the new evidence. Rutkowski v. Astrue, 368 F. App'x 226, 229 (2d Cir. 2010). If the Appeals Council ultimately denies review of a case, the ALJ's decision is the final agency decision and the subject of district court review.

See Perez, 77 F.3d at 44. Now, this Court must determine whether Dr. Wang's opinion related to a period before the ALJ's hearing decision, and if it did, whether substantial evidence of the entire administrative record, including the new evidence, supports the ALJ's decision. See id. at 46.

Because Dr. Wang stated that "[w]e saw [Plaintiff] last on 5/30/14," Tr. 264, the implication is raised that Plaintiff had an on-going relationship with Dr. Wang and the other medical providers at Capital Region Special Surgery - Neurology. However, even assuming, *arguendo*, that Dr. Wang's evaluation concerned a period of time before the ALJ's decision, the information provided by Dr. Wang does not affect the ALJ's decision. This is because much of Dr. Wang's evaluation merely reiterated information that was already in the record. The ALJ already noted in her decision that Plaintiff complained of numbness in his hands, that Plaintiff had undergone nerve testing, and that nerve testing revealed bilateral nerve entrapment. Tr. 18, 205-06. Moreover, none of Plaintiff's subjective complaints to Dr. Wang contradict Plaintiff's testimony as to his ability to perform work-related functions and activities of daily living (discussed more fully below). The ALJ also was aware of and considered Plaintiff's diagnosis of myotonic dystrophy, as she found the impairment to be a severe impairment. Tr. 17. Thus, the information provided by Dr. Wang "d[oes] not alter the weight of the evidence so dramatically as to require the Appeals Council to take the case." Capron v. Colvin, 2015 WL 3906723, at *16 (W.D.N.Y. June 25, 2015) (citing Bushey v. Colvin, 552 F. App'x 97, 98 (2d Cir. Jan. 29, 2014)).

While Dr. Wang's opinion that Plaintiff was 100% disabled is new evidence, it would not affect the ALJ's decision because it is a statement on an issue reserved to the Commissioner. Statements on an issue reserved to the Commissioner are not entitled to

9

any special deference.  See 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); Social Security Ruling (SSR) 96-5p; Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) ("A treating physician's statement that a claimant is disabled cannot itself be determinative.").  Therefore, Dr. Wang's opinion of Plaintiff's level of disability did not render the ALJ's decision contrary to the weight of the evidence. 20 C.F.R. §§ 404.970(b), 416.1470(b).

For these reasons, the Court finds that the Appeals Council did not err in refusing to reverse or remand the ALJ's decision based on Dr. Wang's report.

### b. Substantial Evidence for the ALJ's RFC Finding

Plaintiff also argues that the ALJ's RFC finding is not supported by substantial evidence. The Court disagrees.

An ALJ has the responsibility to determine a claimant's RFC based on all the relevant medical and other evidence in the record.  20 C.F.R. §§ 404.1527(d)(2), 404.1545(a), 404.1546(c), 416.927(d)(2), 416.945(a), 416.946(c).  The burden is on Plaintiff to show that he cannot perform the RFC as found by the ALJ.  See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).  RFC findings "need only afford an adequate basis for meaningful judicial review, apply the proper legal standards, and be supported by substantial evidence such that additional analysis would be unnecessary or superfluous." McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014) (internal quotation marks and brackets omitted) (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)).

While Plaintiff argues that the RFC finding does not include any limitations for his anxiety and impulse control disorder, the ALJ specifically accounted for all of Plaintiff's mental impairments, including anxiety and impulse control disorder, by noting that he would be off task less than 10 percent of the day and limiting him to simple, routine tasks, simple

instructions and directions, and complex tasks only under occasional supervision. Tr. 20.
The ALJ ultimately found, based on VE testimony, that an individual with this mental RFC
could perform representative jobs like photocopy machine operator, collator operator, and
house cleaner. Tr. 25.  These jobs are all unskilled.  Tr. 288-89.  "'The basic mental
demands of competitive, remunerative, unskilled work include the abilities (on a sustained
basis) to understand, carry out, and remember simple instructions; to respond appropriately
to supervision, coworkers, and usual work situations; and to deal with changes in a routine
work setting.'" Goulart v. Colvin, 2017 WL 253949, at *6 (D. Conn. Jan. 20, 2017)  (quoting
*Titles II & XVI: Capability to Do Other Work-The Medical-Vocational Rules As A Framework
for Evaluating Solely Nonexertional Impairments*, SSR 85-15 (S.S.A. 1985)).  By limiting
Plaintiff to unskilled jobs, the ALJ accommodated for any problems Plaintiff might have with
changes in routine work setting and mental demands of works. Therefore, the ALJ
accounted for all of Plaintiff's mental impairments.  Furthermore, Plaintiff has failed to
specifically allege or prove which further limitations were warranted.  See Poupore, 566
F.3d at 306.

     Moreover, substantial evidence supports these limitations.  As the ALJ noted, Plaintiff
reported no difficulty getting along with family, friends, neighbors, authority figures, or
others. Tr. 124, 126.  He told the ALJ he only had a little difficulty with his concentration,
focus, and short-term memory.  Tr. 282.  He said he could follow spoken and written
instructions, could finish what he starts, and had no problem paying attention. Tr. 126.
During the only mental status exam in the record, his presentation was appropriate, eye
contact was fair, recent memory was mildly impaired, remote memory was normal, thoughts
were organized, and his judgment was fair. Tr. 214.  He was also open and cooperative. Tr.

214.

Based on this evidence, the Court finds that substantial evidence supports the mental RFC limitations the ALJ assessed. Accordingly, the motion on this ground is denied.

**VII. CONCLUSION**

For the reasons discussed above, Plaintiff's motion for judgment on the pleadings is DENIED; the Defendant's motion is GRANTED; and the decision of the Commissioner is AFFIRMED.

**IT IS SO ORDERED.**

**Dated:** March 7, 2017

_Thomas J. McAvoy_
Thomas J. McAvoy
Senior, U.S. District Judge